UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DONALD R. SAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:23-cv-00135-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MARTIN O'MALLEY, *Acting* | ) | **&** |
| *Commissioner of Social Security*, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Donald Saylor seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's administrative decision denying his application for Social Security Disability Insurance, a period of disability, and Supplemental Security Income Benefits. For the reasons stated below, the Court will **AFFIRM** the administrative decision.

**I**

Mr. Saylor filed his application for benefits on January 8, 2021, alleging disability beginning on July 30, 2016. [R. 10-1 at 1; R. 7 at 1.] His application was denied initially and upon reconsideration. [R. 10-1 at 1.] Ms. Saylor then submitted a written request for a hearing. *Id.* A telephonic hearing occurred on September 13, 2022. *Id.* After an unfavorable decision issued on September 26, 2022, Mr. Saylor requested review by the Appeals Council. *Id.* The Council denied the request for review, rendering the ALJ's September 26, 2022, decision the final decision of the Commissioner. *Id.*; 20 C.F.R. § 404.981.

Mr. Saylor, who spent twenty years working in coal mines, alleges disability due to a number of impairments. [R. 10-1 at 2–3.] He suffers from "right shoulder impingement

syndrome with degenerative joint disease, degenerative disc disease of the lumbar spine, obesity and depression," among other issues. *Id.*

In evaluating a claim of disability, the Administrative Law Judge ("ALJ") conducts a five-step analysis. *See* 20 C.F.R. § 404.1520 (2024).[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. § 404.1520(b). Second, if a claimant does "not have any impairment or combination of impairments which significantly limit[] [his] physical or mental ability to do basic work activities," then he does not have a severe impairment and is not "disabled" as defined by the regulations. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual. § 404.1520(e); 20 C.F.R. § 404.1545 (2024). Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." § 404.1520(e), (f). The

---

[1] The Sixth Circuit summarized this process in *Jones v. Commissioner of Social Security*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

claimant has the ultimate burden of proving compliance with the first four steps. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, he is "disabled." *Id.*; § 404.1520.

Here, the ALJ issued a written decision on September 26, 2022. [R. 7 at 15–28.] At Step 1, the ALJ found that Saylor has not engaged in substantial gainful activity from February 7, 2020, to December 31, 2021. *Id.* at 18. At Step 2, the ALJ found that Saylor "had the following severe impairments: "right shoulder impingement syndrome with degenerative joint disease, degenerative disc disease of the lumbar spine, obesity, and depression." *Id*. At Step 3, the ALJ concluded that Saylor "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)[,]" so the analysis continued to the next step. *Id*. At Step 4, the ALJ concluded that Mr. Saylor "had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) except[:]"

> he could not crawl or climb ladders, ropes, or scaffolds. He frequently could reach with his right upper extremity. He should have avoided all exposure to unprotected heights or dangerous machinery. [Saylor] could understand and remember simple instructions; and he could maintain attention, concentration, and pace to carry out simple tasks. He was able to adapt to occasional workplace changes related to simple tasks.

*Id.* at 20. Finally, at Step 5, the ALJ found that from February 7, 2020 to December 31, 2021, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." *Id.* at 27. As a result, the ALJ concluded that Mr. Saylor was not disabled. *Id.* at 27–28. The Appeals Council found no reason for review. *Id.* at 5–8. Mr. Saylor now seeks judicial review in this Court.

## II

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Hum. Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### A

Mr. Saylor challenges the ALJ's Step 5 RFC assessment. [R. 10-1 at 4–9.] Specifically, he avers that the ALJ mischaracterized medical records and inappropriately rejected the opinions of treating physicians. *Id.*

"No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). "[F]or claims made on or after March 27, 2017, ALJs will assess both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record." *Francis v. Saul*, 558 F. Supp. 3d 527, 532 (E.D. Mich. 2021); 20 C.F.R. § 404.1520c. In making that assessment, the ALJ should consider "supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion." *Francis*, 558 F. Supp. 3d at 533 (citing § 404.1520c(c)). Supportability and consistency are the most important factors and must be addressed by the ALJ. § 404.1520c(b)(2). But an ALJ need not explain how she considered the remaining factors. *Id.*

### B
#### 1

First, Saylor disputes what he characterizes as the ALJ's decision to "disregard" the opinion of treating physician Dr. Dye. [R. 10-1 at 4–7.] According to the ALJ, Dye's restrictive opinion of Saylor's capacity was belied by Saylor's physical exam and diagnostic imaging. [R. 7

5

at 22.] Saylor disagrees, asserting that his diagnostic imaging reveals serious degeneration in his spine. [R. 10-1 at 6–7.]

The ALJ considered Saylor's imaging but found it to show only "mild" degeneration. [R. 7 at 21–26.] In conjunction with Saylor's other "normal" physical exams, the ALJ was unpersuaded by Dye's opinion. *Id.* at 22. Instead, the ALJ was persuaded by the prior determinations of state agency medical consultants (Dr. Booth and Dr. Farmer) who found that Saylor could perform medium work. *Id.* at 25. That conclusion, the ALJ explained, was buttressed by Saylor's "normal gait, strength, sensation, and reflexes, in spite of pain from mild lumbar disc degeneration." *Id.*

To the extent Saylor challenges the ALJ's characterization of his MRIs and x-rays, [R. 10-1 at 6], the ALJ's summary of those records was reasonable. [*See, e.g.*, R. 7 at 435–36, 821–22, 900.] And although Saylor asserts that the ALJ ignored his visit with an orthopedic physician, an MRI from 2018, and the longevity of his treatment, the ALJ did address those issues. [R. 7 at 23, 21–26.]

The ALJ further considered Saylor's assessment of his own capacity, but found parts of his testimony to be inconsistent with the record. [R. 7 at 25.] For instance, the ALJ noted that Saylor exhibited normal and rational thought processes in spite of his statements that his severe pain impeded his ability to focus. *Id.* See *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant. . . . [A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference[.]") (internal citation omitted).[2]

---

[2] Saylor also appears to dispute the ALJ's decision to reject the opinion of APRN King. [R. 10-1 at 6.] However, King opined that Saylor had no physical limitations. [R. 7 at 839–43.] The ALJ disagreed with APRN King's findings of normalcy, emphasizing that Saylor's test results did reveal degeneration in his spine and shoulder. [R. 10-1 at 24.]

6

Here, the ALJ's conclusion was buttressed by a reasonable supportability and consistency analysis. It seems that reasonable minds can (and do) disagree about the extent of Saylor's spinal and shoulder limitations. But that is not a reason to reverse the Commissioner's decision. Because the ALJ's rejection of Dye's RFC opinion was based on substantial evidence, it must stand.

**2**

Finally, Saylor avers that the ALJ inappropriately "underestimated" his mental health limitations by discounting the opinion of psychiatrist Dr. Raza. [R. 10-1 at 7–8.] However, a review of the record reveals that the ALJ considered the opinions of Dr. Raza (along with those of Saylor's other therapists). [R. 7 at 24–25.] The ALJ noted Dr. Raza's diagnosis of persistent depressive disorder and a mood disorder. *Id.* And while the ALJ understood that Saylor was medicated for his depression, the ALJ balanced that information against the whole of his therapy records. *Id.* Those records revealed a consistently "normal" mental status, a cooperative disposition, and no cognitive or memory problems. *Id.*

Hence, it does not appear that the ALJ "completely disregarded the opinion" of Dr. Raza. [R. 10-1 at 9.] Rather, the ALJ acknowledged and accounted for Saylor's depression, mood disorder, and related medication.

**III**

Upon review of the record, the Court finds that the ALJ's decision is supported by substantial evidence. Even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports the ALJ's conclusion. *See Her*, 203 F.3d at 389–90; *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir.

7

1993). **ACCORDINGLY**, and the Court being sufficiently advised, it is hereby ordered as follows:

1. Mr. Saylor's Motion for Summary Judgment **[R. 10]** is **DENIED**;

2. The Commissioner's Decision is **AFFIRMED**; and

3. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This the 24th day of July, 2024.

Gregory F. Van Tatenhove
United States District Judge